IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BEE FOREST PRODUCTS, INC.,

                Plaintiff,

v.

WESTERN NATIONAL MUTUAL
INSURANCE COMPANY,

                Defendant.

OPINION AND ORDER

20-cv-338-wmc

---

Plaintiff Bee Forest Products, Inc., brought this claim against its insurer, Western National Mutual Insurance Company, seeking coverage on a claim arising out of its harvesting timber on property without the owners' consent. Before the court is defendant's motion for summary judgment. (Dkt. #9.) For the reasons that follow, the court will grant defendant's motion and direct entry of judgment in its favor.

## UNDISPUTED FACTS[1]

### A. Overview of the Parties and Insurance Policy

Plaintiff Bee Forest Products, Inc., is a Wisconsin corporation, with its principal place of business in Nelson, Wisconsin. Defendant Western National Mutual Insurance Company is a Minnesota corporation, with its principal place of business in Edina, Minnesota. Western National insured Bee Forest under the terms of a Commercial General Liability policy. (Def.'s MSJ, Ex. C ("the Policy") (dkt. #10-3).)

In relevant part, the Policy provides

---

[1] These facts are taken from the parties' joint statement of stipulated facts. (Dkt. #11.)

SECTION I - COVERAGES
COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insurance Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage is caused by an "occurrence" . . . .

(*Id.* at 3.)

The Policy contains the following exclusions applicable to the timber cutting claim at issue here:

> j. Damage to Property
>
> "Property damage" to:
> . . .
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damages" arises out of those operations; or
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(*Id.* at 7.)

Material to the parties' dispute, the Policy contains the following definitions:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

22. "Your work":

    a. Means:

        (1) Work or operations performed by you on your behalf; and
        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
        (2) The providing of or failure to provide warnings or instructions.

(*Id.* at 17-18.)

The Policy also contains a timber and logging expansion endorsement. The endorsement adds coverage under Coverage A for "cross over cutting," which is defined as

> property damage for which you are legally obligated to pay due to a bona fide mistake in cutting of timber by you or for you that it outside of your designated or authorized boundaries.

(*Id.* at 30 (all caps omitted).)

### B. Underlying Event

On February 19, 2019, Bee Forest entered into a Timber Sale Contract with LeRoy

3

Bechly, via his wife Betty Bechly, who held a power of attorney for her husband. (Def.'s MSJ, Ex. A ("the Contract") (dkt. #10-1).) The Contract provided for Bee Forest to cut timber on property in Lincoln Township, Buffalo County, Wisconsin. The Contract identified LeRoy Bechly as the owner of the property and called for Bee Forest to "cut, remove, and pay for . . . merchantable timber" within certain boundaries. (*Id.*) Bee Forest checked on-line property records, which also listed Leroy Bechly as the fee simple owner of the property. Bee Forest also attempted to file a cutting notice, but the local courthouse was closed.

In March 2019, Bee Forest began cutting timber on the property, all of which occurred within the boundaries set forth in the contract. Shortly after cutting began, however, Bee Forest received notice from Bechly's daughters, via a letter from their attorney, that *they* were the true owners of the property and their father only held a life estate. (Def.'s MSJ, Ex. B (dkt. #10-2).) In the letter, Bechly's daughters demanded that Bee Forest immediately stop all cutting on the property, which it did.

Bee Forest reported the dispute with its insurer Western National, but it denied coverage under the Policy. After ultimately settling the timber cutting dispute, Bee Forest then filed this lawsuit seeking $86,079.45 in damages from Western National, together with attorneys' fees, costs and disbursements.

OPINION

Just like other contracts made in Wisconsin, insurance policies are interpreted to effectuate the contracting parties' intent. *Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶ 14, 369 Wis. 2d 607, 881 N.W.2d 285 (citing *Am. Family Mut.*

*Ins. Co. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65). However, the court interprets an insurance policy's terms "as a reasonable person in the position of the insured would understand the language." *Id.* (citing *Estate of Sustache v. Am. Fam. Mut. Ins. Co.*, 2008 WI 87, ¶ 19, 311 Wis. 2d 548, 751 N.W.2d 845). Moreover, "if the language of a policy is ambiguous, susceptible of more than one reasonable interpretation, [the court] will construe it narrowly, against the insurer, and in favor of coverage." *Liebovich v. Minnesota Ins. Co.*, 2008 WI 75, ¶ 18, 310 Wis. 2d 751, 751 N.W.2d 764. At the same time, the court is not to "interpret insurance policies to provide coverage for risks the insurer did not contemplate or underwrite and for which it has not received a premium." *Am. Family Mut. Ins. Co.*, 2004 WI 2, at ¶ 23.

Here, defendant Western National seeks summary judgment in its favor as to Bee Forest's coverage claim on three independent grounds: (1) cutting of timber was not an "occurrence" as that term is defined by the Policy; (2) any harm or damage was expected or intended or was to property on which Bee Forest was working and, therefore, excluded from coverage; and (3) the lumbering and logging endorsement does not apply because there was no cross over cutting, as that term is defined in the endorsement. For reasons that are not clear, plaintiff did not file a response to defendant's motion. Nonetheless, rather than rely on a failure to prosecute argument, because the parties have already agreed on the material facts, including the policy language, and this coverage claim is amenable to disposition at summary judgment, the court will proceed to consider defendant's motion on its merits.

## I. Occurrence Requirement

As detailed above, the Policy provides coverage for "property damage" only if such damage was caused by an "occurrence," and further defines "occurrence" to mean an "accident." (Policy (dkt. #10-3) 3, 17-18.) As the Wisconsin Supreme Court explained in *American Family Mutual Insurance Company v. American Girl, Inc.*, 2004 WI 2, "[t]he word 'accident,' in accident policies, means an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or cause must be accidental." *Id.* ¶ 37; *see also Jones v. Baecker*, 2017 WI App 3, ¶ 66, 373 Wis. 2d 235, 891 N.W.2d 823 ("[V]olitional acts that produce a desired event are not 'accidents,' even if they produce unexpected and unforeseen results and even if they are precipitated by one or more negligent acts.").

Here, there is no dispute that Bee Forest intentionally acted by cutting timber on the property at issue. This was a volitional act that produced a desired result. Thus, because "the act that caused the harm was not an accident, then there was no occurrence to trigger coverage." *Talley v. Mustafa*, 2018 WI 47, ¶ 18, 381 Wis. 2d 393, 911 N.W.2d 55; *see also Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, ¶ 40, 311 Wis. 2d 492, 753 N.W.2d 448 (explaining that whether there is an "occurrence" turns on "whether the cause of the damage was accidental"). In further support, defendant directs the court to two cases from other jurisdictions specifically holding that the intentional harvesting of timber without the knowledge and consent of *all* property owners was not a covered "occurrence," even if the insured acted with the belief that the harvesting was authorized. *See Nat'l Tr. Ins. Co. v. Carolina Timber, Inc.*, No. 9:14-CV-272-SB, 2014 WL 12615709, at

*3 (D.S.C. Dec. 18, 2014) ("[T]here is no 'accident' or 'occurrence' because Carolina Timber intentionally acted in purchasing, harvesting, and selling the timber on the Property."); *Cap. City Ins. Co. v. Forks Timber Co.*, No. CV 511-039, 2012 WL 3757555, at *6 (S.D. Ga. Aug. 28, 2012) ("Forks's intentional conduct in harvesting timber under the erroneous belief that the timber was unencumbered, and failing to perform a title search, does not constitute an accident as that term is used in the CGL Policies."). This seems to be a unique interpretation specific to commercial general liability policies, but one that is well-established in the caselaw and having received no opposition from plaintiff, the court has no option but to follow it. As such, based on the language in the Policy, the definition of "occurrence" under Wisconsin law, and caselaw from other jurisdictions involving similar claims, therefore, the court concludes that the Policy does not cover plaintiff's intentional harvesting of timber, even if done with a good faith belief that its act was authorized.

## II. Timber and Logging Expansion Endorsement

Having concluded that there is no coverage under the terms of the Policy, the court need not consider defendant's second basis for summary judgment in its favor -- namely, that the Policy excludes coverage. *See Am. Fam. Mut. Ins. Co.*, 2004 WI 2, at ¶ 24 ("First, we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there.").

However, the court will briefly touch on whether the timber and logging expansion endorsement would have provided a basis for coverage. The endorsement extends coverage

to "cross over cutting," which is defined as damage to property caused by "cutting of timber by you or for you that is *outside of your designated or authorized boundaries*." (Policy (dkt. #10-3) 30 (emphasis added).) While defendant acknowledges that no Wisconsin court has interpreted this language, the court agrees with defendant that this endorsement covers harvesting of timber outside of a property boundary, something the parties agree did not occur here. Instead, the cutting occurred *within* the boundaries of the designated property. *See Nat'l Tr. Ins. Co.*, 2014 WL 12615709, at *4 (rejecting argument that similar expansion endorsement provided coverage where insured failed to obtain consent of co-owner of property, explaining "Carolina Timber did not unintentionally and accidentally cross a property line or cutting area specified, delineated, described, or marked").

For these reasons, the court agrees with defendant that the Policy does not provide coverage of Bee Forest's claim. As such, the court will grant defendant's motion for summary judgment.

ORDER

IT IS ORDERED that:

1) Defendant Western National Mutual Insurance Company's motion for summary judgment (dkt. #9) is GRANTED.

2) The clerk of court is directed to enter judgment in defendant's favor.

Entered this 25th day of June, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

8